PROVIDED TO MARION C.I. T.S.
ON 1-7-21 FOR MAILING.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT
## TAMPA DIVISION

TY SCHULZE,

    Petitioner

Case No: 8:21 cv 73 36 JSS

vs.

MARK S. INCH, Secretary
Florida Department of Corrections,
    Respondent
_____/

## PETITION FOR HABEAS CORPUS RELIEF

COMES NOW, the Petitioner, Ty Schulze, pro se, and respectfully moves this Court for Habeas Corpus Relief pursuant to 28 U.S.C. 2254. In support thereof, the Petitioner shows as follows:

1)     The Petitioner is seeking relief from a denial of his Motion to Suppress from the Tenth Judicial Circuit in and for Polk County, Florida, in case CF18-006187-XX.

2)     On August 8, 2018, a four count information was filed against the Petitioner charging him with (1) Trafficking in Amphetamine (2) Possession of 3, 4-Methylenedioxy Methamphetamine (MDMA); Possession of Cannabis (More than 20 grams) and; (4) Possession of Drug Paraphernalia. All these alleged violations occurred on or about June 28, 2018. (R. 17-18)

3)     On March 26, 2019, counsel for the Petitioner filed a Motion to suppress evidence obtained pursuant to an illegal search. (R 23-27)

4) The Honorable Neil A. Roddenberry held the suppression hearing on May 10, 2019, with State Attorney, Jessica Embree representing the State, and Kelly Collier representing the Petitioner.

5) Petitioner's Motion to Suppress was denied on June 3, 2019. (R. 35, 69)

6) On July 5, 2019, Petitioner entered a no contest reserving the right to appeal the denial of his Motion to Suppress. (R. 44-49)

7) The trial court conducted a plea colloquy and Petitioner was adjudicated guilty to all counts. (R. 171-174)

8) Petitioner was sentenced to 84-months with 7-year minimum mandatory for count one; to 60-months for counts two and three, to run concurrent with count one and; to time served in the county jail for count four. (R.56-72, 74)

9) Petitioner filed a timely Amended Notice of Appeal on July 19, 2019. (R. 67)

10) Public Defender, Carly J. Robbins-Gilbert was appointed to represent the Petitioner on Appeal and filed an "Anders Brief" on March 10, 2020.

11) Petitioner filed his pro se Appeal Brief on May 26, 2020. Case number 2D19-2612 was assigned.

12) The Second District Court of Appeal denied Petitioner's appeal on September 30, 2020.

13) Petitioner filed for a rehearing on October 15, 2020.

14) Rehearing was denied on December 1, 2020.

15) Mandate from the District Court of Appeal of the State of Florida, Second District, issued December 18, 2020.

## EXHAUSTION

The Petitioner had a State Court hearing on his Motion to Suppress and Appealed the denial of his motion to the District Court of Appeal.

Therefore, after giving the State Court's opportunity to correct this Fourth Amendment violation, this issue is now ripe for review in Federal Court.

## WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS

F.D.L.E. S.A. Starr violated the Petitioner's Constitutional rights under the *Fourth Amendment* of the United States Constitution and *Article 1, Section 9*, of the Florida Constitution when he conducted an illegal search.

In the instant case, there are a lot of discrepancies between what the actual facts state from the record of the Motion to Suppress hearing than the actual facts relied upon in the order denying the Petitioner's Motion to Suppress.

The written order relies on S.A. Starr's claim that he went to the Petitioner's residence based on information from a reliable source. (R. 30). However, when someone gives information that is not accurate, their information cannot be deemed reliable. Simply because it is false and therefore misleading.

S.A. Starr alleged he conducted a controlled phone call in which he had his informant call a big time drug dealer, Heric Raya, also known as "Fat Jose" to ask him if he had sold drugs to the Petitioner and if so, how much and when. (R. 75,136)

3

It is common knowledge that drug dealers operate on a "need to know" basis. If someone starts asking questions that is none of their business, it just naturally makes people wonder why those questions are being asked. To think that an informant would ask a Big Time drug dealer who he sold drugs to, and how much and when, would be asking this Court to set aside all logic and common sense. It would be greatly undermining the intelligence of the Court.

Despite what S.A. Starr claims, it appears there was never a controlled phone call. No recording of the alleged phone call was presented at the Motion to Suppress Hearing. S.A. Starr simply took the stand and told everyone that he conducted a controlled phone call. He claimed that the phone call revealed that the Petitioner had a pound of drugs, yet the search revealed only two ounces. (R. 94-95, 98, 136). Yet when it came to the Post-Miranda and the recorded interview between the Petitioner and S.A.Starr, they played that recording in Court for everyone to hear. (R. 91-102), which goes to show that had there really been a controlled phone call between the informant and the Big Time drug dealer, they would have played that for the court also.

During the suppression hearing, the record reflects that S.A.Starr testified for 60-pages of transcripts. During his testimony not one single time did he ever claim that he conducted his search based on "reasonable suspicion." During his testimony, he tries to show that his search was consensual; despite the fact that the record clearly refutes such a claim.

The record shows that S.A. Starr parked their vehicle behind Petitioner's truck even though there were other places to park. (R. 78-80, 133). The record shows that S.A. Starr then approached the Petitioner and said "Police, don't run" And, at no time was the Petitioner ever told that he could leave. (R. 85) The Petitioner testified that he felt detained. (R. 136) S.A. Starr testified that had the Petitioner tried to leave he would have chased him. (R. 115).

4

The Petitioner was ordered to empty his pockets, and S.A. Starr took pictures of his money. Then took Petitioner's keys and gave them to other officers and told them to go search Petitioner's truck and boat. (R. 141, 142, 121, 144). At no time did the Petitioner know that he could refuse to allow the agents to search. (R. 151).

S.A. Starr should have known that when he ordered the Petitioner to remove the items from his pockets; that order has the same legal effect as if S.A. Starr reached inside Petitioner's pockets and removed the items himself.

The mere fact that S.A. Starr went to all the trouble to try to convince the Court that the Petitioner was not detained and that the search was consensual goes far to prove that he knew he did not have a "reasonable suspicion" to conduct a warrantless search.

Had S.A. Starr believed that he had a "reasonable suspicion", he would not have cared one way or the other how the Petitioner felt about being detained or search. Yet when he was asked if he believed he was able to search without the necessity of a warrant S.A. Starr replied, **"I mean, it's worth a shot"**. (R. 119)

Also, Petitioner would ask this Court to notice that when S.A. Starr was asked: "Now if Mr. Schulze had not been cooperative with you- if he had refused to answer any questions, for example-would you have just turned around and left?"

S.A. Starr replied: "You know what? I really- I didn't really think about that. I mean, just because I didn't have to. It's kind of one of those things where, you know, we didn't have to go that route so I didn't so I didn't really care to think about it. I mean, there is a number of things we could have done. But, you know, I don't know which way we would have went" (R. 126)

5

This whole case is not about what S.A. Starr could have done, it's about what he didn't do. He didn't bring the Petitioner's probation officer with him.

He didn't obtain a search warrant. He didn't have Petitioner's voluntary consent to detain or search him. And he sure didn't have a "reasonable suspicion" to conduct a warrantless search.

Instead of utilizing any of the legal methods available to him, S.A.Starr simply chose to reduce the Petitioner's Fourth Amendment rights down to a "I mean it's worth a shot". S.A.Starr didn't **HAVE** a reasonable suspicion to search without a search warrant. He searched the Petitioner's residence "**Looking for**" something that he could use to justify his failure to utilize legal methods.

S.A.Starr knew that he had nothing to put in an affidavit for a search warrant. He knew that no neutral Magistrate would find that he had anything to secure a search warrant. He knew he could not present the Magistrate with anything that would pass a "Franks Test". That's why he said "I mean, it's worth a shot".

S.A.Starr had no personal knowledge of when the Petitioner purchased the drugs. He had no personal knowledge of where the Petitioner bought drugs. He had no personal knowledge of how much drugs the Petitioner purchased. He had no personal knowledge of how much the Petitioner paid for the drugs. He did not personally witness the Petitioner buying drugs. He did not establish that he received information from a reliable source. And, he could not produce a recording of the so-called alleged controlled phone call.

Any neutral Magistrate would have scolded S.A.Starr for attempting to obtain a search warrant without supplying these statements of particulars in his affidavit. S.A.Starr did not have

one single thing that would pass the "Franks" Hearing test. In fact, he never even stated the day or time of day that the Petitioner purchased drugs.

S.A.Starr admitted that he did not obtain or seek a search warrant, despite that his claim that he "would have easily been able to obtain" one. (R. 119). As has been demonstrated through facts, no neutral Magistrate would have issued a search warrant and that is why he didn't get one.

The Petitioner does not deny that there were legal methods available to S.A.Starr to conduct a legal search. What the Petitioner claim is that S.A.Starr intentionally and deliberately chose not to utilize any of those legal methods. He simply decided to gamble that our court systems would overlook his decision to reduce the Petitioner's Fourth Amendment rights down to a "I mean, it's worth a shot".

## RELIEF SOUGHT

The Petitioner respectfully requests this Honorable Court to find that his Constitutional rights under the Fourth Amendment were violated and order the trial court to grant Petitioner's Motion to Suppress.

## CERTIFICATE AND DECLARATION

I, Ty Schulze, the Petitioner in this Federal Habeas Corpus 2254, hereby certify and declare under the penalty of perjury, that I have read this petition, and the facts stated within are true and correct, and this petition, along with true and correct copies have been delivered to prison officials for mailing on this  7TH  day of  JANUARY , 2021 , by the undersigned.

Ty Schulze # 365464
Petitioner/pro se
Marion Correctional Institution

Lowell, Florida 32663

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT
# TAMPA DIVISION

**TY SCHULZE,**

    Petitioner

Case No:_____

vs.

**MARK S. INCH,** Secretary
Florida Department of Corrections,
    Respondent
_____/

# MEMORANDUM OF LAW IN SUPPORT OF PETITION
# FOR HABEAS CORPUS RELIEF

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT
TAMPA DIVISION

TY SCHULZE,

    Petitioner                               Case No:_____

vs.

**MARK S. INCH**, Secretary
Florida Department of Corrections,
    Respondent
_____/

**APPENDIX FOR PETITION FOR**

**HABEAS RELIEF**

# TABLE OF AUTHORITIES

**FLORIDA SUPREME COURT**

Conner v. State, 803 So. 2d 598, 608 (Fla. 2001) .................................................................... 11

Grubbs v. State, 373 So. 2d 905 (Fla. 1979) ............................................................................. 15

Soca v. State, 673 So. 2d 24 (Fla. 1996) ................................................................................... 15

**FLORIDA DISTRICT COURT OF APPEALS**

B. v. State, 866 So. 2d 200, 202 (Fla. 2nd DCA 2004) ............................................................ 11

Bamberg v. State, 953 So. 2d 649(Fla. 2nd DCA 2009) .......................................................... 15

Butler v. State, 706 So. 2d 100 (Fla. 1st DCA 1998) ............................................................... 12

**FLORIDA CONSTITUTION**

Article 1, Section 12 ................................................................................................................. 11

Article 1, Section 9 ................................................................................................................... 11

Article 1, Section 9, .................................................................................................................... 3

**UNITED STATES SUPREME COURT**

Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L. Ed. 2d 1669 (1960) ........ 16

Franks v. Delaware, 438 U.S. 154 (1978) ................................................................................ 14

Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L. Ed. 2d 911 (1996) ............ 11

**FEDERAL DISTRICT COURTS**

Stone v. Powell, 428 U.S. 465, 486 (1976) .............................................................................. 15

United States v. Janis, 428 U.S. 433, 446-447 (1976) ............................................................. 16

United States v. Knights, 534 U.S. 112 (2001) .................................................................. 12, 15

United States v. Peltier, 422 U.S. 531, 536-539 (1975)......................................................................16

Wong Sun v. United States, 371 U.S. 471 (1963) ..........................................................................15

**UNITED STATES CODE**

28 U.S.C. 2254.................................................................................................................................1

**U.S. CONSTITUTION**

Fourth Amendment ................................................................................................................ 3, 7, 11

## WHETHER THE TRIAL COURT
## ERRED IN DENYING APPELLANT'S
## MOTION TO SUPPRESS

The Fourth Amendment of the United States Constitution and Article 1, Section 9 and 12 of the Florida Constitution protects persons from illegal search and seizures.

A trial court's determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence. However, the trial court's determination on questions of law and fact and its legal conclusions are subject to de novo review. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L. Ed. 2d 911 (1996); Conner v. State, 803 So. 2d 598, 608 (Fla. 2001); E.B. v. State, 866 So. 2d 200, 202 (Fla. 2nd DCA 2004).

The Petitioner preserved this issue as part of his plea agreement. Review of a Motion to Suppress is a mixed question of law and facts. Butler v. State, 706 So. 2d 100 (Fla. 1st DCA 1998). Here in Petitioner's case he has established that S.A. Starr conducted a search that was illegal because he failed to utilize the legal methods that were readily available to him.

S.A. Starr could have brought the Petitioner's probation officer and that would have made his search legal. He could have conducted an investigation and gathered enough evidence to obtain a search warrant from a neutral Magistrate. He could have tried to gain voluntary consent from the Petitioner which would have made the search legal or he could have investigated enough to establish a " reasonable suspicion" which would have made his search legal when copulated with the "submit to search" clause in Petitioner's probation.

As has been shown in the Petitioner's Habeas Corpus Motion, S. A. Starr did not do any of these things. Despite the prosecutor's attempt to try and insert that, S.A. Starr's search was legal because he supposedly had a "reasonable suspicion" to search, there are no facts to support the "reasonable suspicion" theory.

The prosecutor argued a United States Supreme Court case, which was <u>United States v. Knights</u>, 534 U.S. 112 (2001).

The petitioner totally agrees with the prosecutor that Knights is an excellent picture perfect example of what a "reasonable suspicion" is.

In the Knights case, Mark Knights was placed on probation for a drug offense. The probation had a warrantless search condition. Three days after Knights was placed on probation, a Pacific Gas and Electric (PG&E) power transformer and adjacent Pacific Bell telecommunications vault near the Napa County Airport were pried open and set on fire, causing an estimated $1.5 million in damage. Brass pad locks had been removed and a gasoline accelerant had been used to ignite the fire. This incident was the latest in more than 30 recent acts of vandalism against PG&E facilities in Napa County.

Suspicion of these acts had long focused on Knights and his friend, Steve Simoneau. The incidents began after PG&E had filed a theft of services complaint against Knights and disconnected his electrical service for failure to pay his bill.

Detective Todd Hancock of the Napa County Sheriff's Department had noticed that the acts of vandalism coincided with Knights court appearance dates concerning the theft of PG&E services. And just a week before the arson, a Sheriff's Deputy had stopped Knights and Simoneau near a PG&E gas line and observed pipes and gasoline's in Simoneaus' pickup truck.

After the PG&E arson, a sheriff's deputy drove by Knights residence, where he saw Simoneaus' truck parked in front. Detective Hancock decided to set up surveillance of Knights apartment. At about 3:10 the next morning, Simoneau exited the apartment carrying three cylindrical items. Detective Hancock believed the items were pipe bombs. Simoneau walked across the street to the Bank of Napa River, and Hancock heard three splashes. Simoneau returned without the cylinders and drove away in his truck. Simoneau then stopped in a driveway, parked and left the area.

Detective Hancock entered the driveway and observed a number of suspicious objects in the truck: a Molotov cocktail and explosive materials, a gasoline can, and two brass padlocks that fit the description of those removed from PG&E transformer vault.

After reviewing the objects in Simoneaus' truck, Detective Hancock decided to conduct a search of Knights' apartment. Detective Hancock was aware of the search condition in Knights' probation order and thus believed that a warrant was not necessary. The search revealed a detonation cord, ammunition, liquid chemicals, instruction manuals on chemistry and electrical circuitry, bolt cutter, telephone-pole-climbing spurs, drug paraphernalia, and a brass padlock stamped "PG&E".

The Knights' case is an excellent case demonstrating what a "reasonable suspicion" really is.

(1)     PG&E had filed a theft of service complaint against Knights'.

(2)     A week before the arson of PG&E a deputy had stopped Knights' and Simoneau near a PG&E gas line and observed pipes and gasoline in Simoneaus' pickup.

(3)     The acts of vandalism on PG&E property coincided with Knights' court dates.

14

(4)     Detective Hancock set up surveillance of Knights' apartment.

(5)     Detective Hancock personally observed Simonoeau exit Knights apartment at 3:10 AM carrying three cylindrical items believed to be pipe bombs. Watched as Simoneau walk across the street with the cylinders to the Napa River, and heard three splashes. Then seen Simoneau returned without the cylinders.

(6)     Detective Hancock personally observed suspicious items in the pickup which were: A Molotov cocktail and explosive materials, a gasoline can, and two brass padlocks that fit the description of those removed from the PG&E transformer vault.

In the instant case S.A. Starr had nothing but an unreliable informant that allegedly made a controlled phone call to a Big Time drug dealer and asked him if he had sold drugs to the Petitioner, and how much, and when. If S.A. Starr would have went to a neutral Magistrate he would not have been given a search warrant because he had nothing that would pass the test laid out in Franks v. Delaware, 438 U.S. 154 (1978).

What distinguishes the Knights' case from the Petitioner's case is that in Knights' case Detective Hancock conducted his warrantless search "BECAUSE OF A REASONABLE SUSPICION" whereas S.A. Starr conducted his warrantless search "SEARCHING FOR A JUSTIFIABLE REASON TO SEARCH". S.A. Starr conducted his warrantless search looking for a reasonable suspicion. There is a major difference between "HAVING" one, than "LOOKING" for one. That is why S.A. Starr was asked if he believed, he could conduct the search without getting a warrant he said, "I mean, its worth a shot".

The Petitioner has established what a reasonable suspicion really is and has established that S.A. Starr did not have a reasonable suspicion to conduct a warrantless search. Without

15

being armed with a reasonable suspicion, the Knights' case does not conflict with Grubbs v. State, 373 So. 2d 905 (Fla. 1979) and Soca v. State, 673 So. 2d 24 (Fla. 1996).

The footnote number four, found in Bamberg v. State, 953 So. 2d 649(Fla. 2nd DCA 2009) says, "If law enforcement officer's lack a reasonable suspicion to search, then Knights' is inapplicable. In that instance, Knights' would not conflict with Grubbs".

Based upon the facts of this case and the case law presented, the search conducted by S.A. Starr might have been "worth a shot" to him, but it was totally illegal and violated the Petitioners Constitutional rights. Therefore, none of the evidence seized during the illegal search may be used for anything other than for probationary purposes. Since the search was illegal, everything seized is fruit of a poisonous tree and must be suppressed. Wong Sun v. United States, 371U.S. 471 (1963).

The facts and the totality of the circumstances in this case screams for the exclusionary rule to be invoked. The court's have repeatedly stated, a principal purpose of the exclusionary rule is to deter violations of the Fourth amendment. Stone v. Powell, 428 U.S. 465, 486 (1976); United States v. Janis, 428 U.S. 433, 446-447 (1976); United States v. Peltier, 422 U.S. 531, 536-539 (1975).

The rule is calculated prevent, not to repair. Its purpose is to deter- to compel respect for the Constitution guarantee in the only effective available way-by removing the incentive to disregard it. Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L. Ed. 2d 1669 (1960).

## RELIEF SOUGHT

The Petitioner respectfully prays that this Honorable Court will grant his petition for Habeas Corpus relief and order the State trial Court to grant Petitioner's Motion to Suppress.

Ty Schulze # 365464
Petitioner/pro se

## CERTIFICATION AND DECLARATION

I, Ty Schulze, the Petitioner in this federal Habeas Corpus 2254, hereby certify and declare that a true and correct copy of the Memorandum of Law in Support of Petition for Habeas Corpus Relief has been delivered to prison officials for mailing on this 7TH day of JANUARY, 2021, by the undersigned.

Ty Schulze # 365464
Petitioner/pro se
Marion Correctional Institution
P.O. Box 158
Lowell, Florida 32663

17

## CERTIFICATE AND DECLARATION

I, Ty Schulze, the Petitioner in this Federal Habeas Corpus 2254, hereby certify and declare that a true and correct copy of this Appendix for Petition for Habeas Corpus Relief has been delivered to prison officials for mailing on this 7TH day of JANUARY 2021, by the undersigned.

Ty Schulze # 365464
Petitioner/pro se
Marion Correctional Institution
P.O. Box 158
Lowell, Florida 32663